# Exhibit "1"

# Exhibit "1"

SUMMONS                         SC-85-1                          Clyde Castleberry Co., Covington, GA. 30015

# IN THE ~~SUPERIOR~~/STATE COURT OF _Clayton_ COUNTY

## STATE OF GEORGIA

_Lorene Joyce Drain, Individually
and as personal representative
of the Estate of Eloise Smith_
         PLAINTIFF

CIVIL ACTION
NUMBER _____ 2015C V00534FF

.VS.

_Doctor's Hospice of Ga, Inc.
Peter Lee, M.D., et al._

         DEFENDANT

## SUMMONS

TO THE ABOVE NAMED DEFENDANT: _Doctor's Hospice of Ga., Inc., Peter Lee, M.D., et al._

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

_H.J.A. Alexander
Alexander Law Firm, 2160 High Point Trail
Atlanta, Ga. 30331_

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _10th_ day of _April_, 20 _15_.

'Clerk of ~~Superior~~/State Court

BY _WMCorr_

Deputy Clerk

INSTRUCTIONS. Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used

## IN THE STATE COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

Lorene Joyce Drain, Individually and   )
as personal representative of the      )
Estate of Eloise Smith,                )   Civil Action File No.
                 Plaintiff   )
                            )

v.                         )   _____
                            )

Doctor's Hospice of Georgia, Inc.,    )
Peter Lee, M.D., Jane or John Doe1,   )
Jane or John Doe 2, Jane or John Doe3, )
Jane or John Doe 4, Jane or John Doe 5, )
Longleaf Hospice, LLC, Jane or John   )
Doe 6, Jane or John Doe7, Jane or John )
Doe 8, Jane or John Doe 9, Jane or John )
Doe10,                         )
                 Defendants.  )

## COMPLAINT

**COMES NOW,** LORENE JOYCE DRAIN, Plaintiff in the above-styled

action and states her complaint as follows:

## PARTIES AND JURISDICTION

1.

Plaintiff Lorene Joyce Drain is the surviving daughter and personal

representative of decedent, Eloise Smith.

2.

Defendant Doctor's Hospice of Georgia, Inc., (hereinafter referenced as

"Doctor's Hospice") is a domestic corporation with the purpose of making a profit

for its owners. It was created and is existing pursuant to the laws of the State of Georgia. Its principal business office is located at 34 Upper Riverdale Road; Suite 100; Riverdale, Georgia 30274. Service can be perfected upon its registered agent Crandle Bray whose office is located at 175 Highway 81; Hampton, Georgia 30274.

3.

Because Defendant Doctor's Hospice is a resident of Clayton County, it is subject to the jurisdiction of this Court.

4.

Defendant Peter Lee, M.D. resides at an unknown address. However, because he is a joint tortfeasor with Doctor's Hospice , he is subject to the jurisdiction of this Court.

5.

Defendant Jane or John Doe 1, at all times relevant hereto, was an employee of Doctor's Hospice who participated in providing, and/or was responsible for, medical treatment and/or care for Eloise Smith while she was a resident at Doctor's Hospice. His or her identity and residence are presently unknown. However, because he is a joint tortfeasor with Doctor's Hospice , he is subject to the jurisdiction of this Court.

6.

Defendant Jane or John Doe 2, at all times relevant hereto, was an employee of Doctor's Hospice who participated in providing, and/or was responsible for, medical treatment and/or care for Eloise Smith while she was a resident at Doctor's Hospice. His or her identity and residence are presently unknown. However, because he is a joint tortfeasor with Doctor's Hospice , he is subject to the jurisdiction of this Court.

7.

Defendant Jane or John Doe 3, at all times relevant hereto, was an employee of Doctor's Hospice who participated in providing, and/or was responsible for, medical treatment and/or care for Eloise Smith while she was a resident at Doctor's Hospice. His or her identity and residence are presently unknown. However, because he is a joint tortfeasor with Doctor's Hospice , he is subject to the jurisdiction of this Court.

8.

Defendant Jane or John Doe 4, at all times relevant hereto, was an employee of Doctor's Hospice who participated in providing, and/or was responsible for, medical treatment and/or care for Eloise Smith while she was a resident at Doctor's Hospice. His or her identity and residence are presently unknown. However, because he is a joint tortfeasor with Doctor's Hospice , he is subject to the

jurisdiction of this Court.                    9.

Defendant Jane or John Doe 5, at all times relevant hereto, was an employee

of Doctor's Hospice who participated in providing, and/or was responsible for,

medical treatment and/or care for Eloise Smith while she was a resident at Doctor's

Hospice.  His or her identity and residence are presently unknown.  However,

because he is a joint tortfeasor with Doctor's Hospice , he is subject to the

jurisdiction of this Court..

10.

Defendant Longleaf Hospice, LLC (hereinafter referenced as "Longleaf") is

a limited liability company with the purpose of making a profit for its owners.  It

was created and is existing pursuant to the laws of the State of Georgia.  Service

can be perfected upon its registered agent Edward Phillip Stone located at 12712

Lawrenceville Hwy, Suite 200; Decatur, Georgia  30033.

11.

Defendant Jane or John Doe 6, at all times relevant hereto, was an employee

of Longleaf who caused Eloise Smith to be a resident at Doctor's Hospice.  His or

her identity and residence are presently unknown.  However, because he is a jointly

liable with Doctor's Hospice , he is subject to the jurisdiction of this Court.

12.

Defendant Jane or John Doe 7, at all times relevant hereto, was an employee of Longleaf who caused Eloise Smith to be a resident at Doctor's Hospice. His or her identity and residence are presently unknown. However, because he is a jointly liable with Doctor's Hospice , he is subject to the jurisdiction of this Court.

13.

Defendant Jane or John Doe 8, at all times relevant hereto, was an employee of Longleaf who caused Eloise Smith to be a resident at Doctor's Hospice. His or her identity and residence are presently unknown. However, because he is a jointly liable with Doctor's Hospice , he is subject to the jurisdiction of this Court.

14.

Defendant Jane or John Doe 9, at all times relevant hereto, was an employee of Longleaf who caused Eloise Smith to be a resident at Doctor's Hospice. His or her identity and residence are presently unknown. However, because he is a jointly liable with Doctor's Hospice , he is subject to the jurisdiction of this Court.

15.

Defendant Jane or John Doe 10, at all times relevant hereto, was an employee of Longleaf who caused Eloise Smith to be a resident at Doctor's Hospice. His or her identity and residence are presently unknown. However, because he is a jointly liable with Doctor's Hospice , he is subject to the

jurisdiction of this Court.

## **FACTUAL ALLEGATIONS**

16.

Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the above-numbered paragraphs.

17.

At all times relevant hereto, Plaintiff Lorene Joyce Drain and her husband Charles (hereinafter referenced as the " Drains") had been caring for Joyce's mother Eloise Smith in their home in Covington, Georgia.

18.

Even though Eloise Smith was 91 yrs old, she was  able to walk, eat in the kitchen with the family, attend family gathers, go to church, hold and enjoy great grand babies.   Attached hereto as Exhibits 1 through 14 are true and accurate copies of photographs which show Mrs. Smith's alertness and some of her activities before she went to Doctor's Hospice.

19.

Eloise Smith was sufficiently healthy, the Drains would sometime leave her alone at the house for a few hours until one of them got home from work.

20.

At all times relevant hereto Longleaf provided part-time in-home medical treatment and care to Mrs. Eloise Smith.

21.

Lorene Joyce Drain needed to visit their daughter California for a week, departing on August 16, 2013.  So the Drains decided to place Mrs. Smith in a respite care facility for the week.

22.

Longleaf chose Doctor's Hospice to take care of Mrs. Smith for the week beginning August 16, 2013.

23.

Doctor's Hospice was to notify Longleaf in the event there was any change in Mrs. Smith's condition.

24.

As a part of the in-home care, Longleaf maintained an emergency medication kit which contained morphine, a copy of a photograph of which is attached hereto as Exhibit 15.

25.

It was only for emergency purposes only and had never been used.

26.

Mrs. Smith was admitted to Doctor's Hospice on August 16, 2013.

27.

Longleaf sent the emergency medical kit to Doctor's Hospice along with

Mrs. Smith.  It was not to be used unless Longleaf was contacted and authorized it.

28.

At the time Mrs. Smith was admitted to Doctor's Hospice, routinely Mrs.

Smith was taking only three medications (Amlodipine, Losartan and Haldol). She

was using only Tylenol 325 mg three times a day on an "as needed" basis.

29.

On admission to Doctors Hospice on 8/16/13  Mrs. Smith was alert with

confusion and was ambulating with  supervision (which was her base line at home).

30.

During her five days stay at the Doctor's Hospice, Eloise Smith received two

high doses of very potent opioid Morphine, eight high doses of very potent

sedative Lorazepam and two high doses of another potent sedative Temazepam.

She became progressively lethargic, bed bound and had decreased intake of food

and fluids.

31.

Doctor's Hospice administered the Morphine, Lorazepam and Temazepam without contacting Longleaf.

32.

On August 21, 2013, Mrs Smith was discharged home on a stretcher and remained very weak, confused and had decreased oral intake.

33,

On September 5, 2013 the Drains brought Mrs. Smith to Rockdale Medical Center for evaluation of Mrs. Smith's significant decline.

34.

In the Rockdale Medical Center Eloise Smith was diagnosed with severe constipation (requiring manual disimpaction of stool) and small bowel obstruction. Eloise Smith continued to suffer nausea, vomiting and abdominal pain due to obstruction of her small bowel.

35.

Mrs. Smith's condition rapidly declined and she developed respiratory failure most likely secondary to aspiration pneumonitis in the setting of small bowel obstruction.

36.

Mrs. Smith died on September 7, 2013. On her death certificate, "bowel obstruction" is listed as her cause of death.

37.

At Doctor's Hospice Eloise Smith was subjected to neglect of her health and well-being that directly resulted in severe pain, discomfort, suffering and injuries including but not limited to acute functional and cognitive decline, small bowel obstruction, aspiration pneumonitis, respiratory failure, and ultimately her death.

38.

The medical staff of the Doctor's Hospice, including the medical director(s) and admitting physician(s,) as well as the Director(s) of Nursing, nursing staff and nursing home administrator, had a responsibility to provide for and promote the health and well-being of Eloise Smith.

39.

Based upon Eloise Smith's age and diagnosis of Alzheimer's dementia and constipation, it should have been clear and obvious to the medical director(s), the admitting physician(s), the Director(s) of Nursing, the nursing staff and the nursing home administrator that Eloise Smith was at risk for developing all of the injuries and conditions she suffered, as well as her death, if she was not provided appropriate nursing care and medical monitoring and services at the nursing home,

including appropriate management of her confusion and appropriate administration of very potent and dangerous medications.

40.

The standard of care under like and similar circumstances required that Eloise Smith receive appropriate nursing assessment, care-planning and implementation of a nursing care plan, together with medical monitoring, services and treatment to prevent Eloise Smith acute cognitive and functional decline.

41.

The Director of Nursing and the nursing staff at Doctor's Hospice Nursing Home and Rehabilitation Center deviated from the standard of care by failing to implement a plan of care to prevent Eloise Smith from acute cognitive and functional decline by providing proper assessment and proper prevention measures including but not limited to non-pharmacological management of confusion and agitation, such as frequent re-orientation, re-direction and close observation by staff.

42.

The standard of care further required the management of her acute confusion and avoidance of very dangerous medications such as Morphine, Lorazepam and Temazepam, by the nursing and medical staff responsible for the care and treatment of Eloise Smith at various times throughout her stay at Doctors Hospice of Georgia,

including Peter Lee, M.D., to supervise and monitor the total program of care

provided to a nursing home resident such as Eloise Smith , including medical

services, medication management, nutrition and nursing care; as well as participate

in the assessment and care planning process and monitor changes in medical and

mental status; and, assure that the facility was providing appropriate care and the

implementation of resident care policies.

43.

Additionally, the standard of care required that Mrs. Smith's physician Peter

Lee, M.D. in his capacity as medical director at various times during the course of

Eloise Smith 's residence at the Doctor's Hospice, based upon her medical

conditions including Alzheimer's dementia and constipation, take appropriate and

timely action to have the nursing home administrator correct deficiencies with

respect to nursing care and other treatment issues which posed the risk of acute

cognitive and functional decline, small bowel obstruction, aspiration pneumonitis,

respiratory failure and death to patients such as Eloise Smith .

44.

Members of the medical staff, in their capacities as attending physician(s)

and medical director(s), including Peter Lee, M. D., deviated from the applicable

standard of care by failing to implement appropriate policies and practices for the

care of such patients as Eloise Smith, and to require that nursing home officials and staff carry out such policies, practices and procedures.

45.

All of above-described deviations from the standard of care set forth in the foregoing paragraphs by the nursing staff; Director(s) of Nursing; attending physician(s) and medical director(s) at Doctors Hospice of Georgia, including Peter Lee, M.D. as the administrator, and the attending nurses, of Doctor's Hospice of Georgia, who were responsible for the care and treatment of **Eloise Smith** , constituted acts of abuse and neglect under 42 CFR §§ 483.25.

46.

The ongoing, above-described course of conduct of the nursing staff, Director(s) of Nursing, attending physician(s) and medical director(s) at Doctor's Hospice of Georgia, including Peter Lee, M.D., the administrator of the Doctor's Hospice, and others responsible for the care and treatment of Eloise Smith at Doctor's Hospice of Georgia, was so egregious that they acted with willful disregard and conscious indifference towards Eloise Smith.

47.

The foregoing combined negligent and wrongful conduct by Doctor's Hospice of Georgia's nursing staff, director(s) of nursing, nursing home administrator and Peter Lee, M.D., in his capacity as attending physician for Eloise

Smith directly resulted in severe pain, distress, suffering, and illness to Eloise

Smith from August 16, 2013 until which ultimately led to her overall decline in

health and her death on September 7, 2013.

## COUNT I - MEDICAL MALPRACTICE - PERSONAL INJURY

### 48.

Each of the allegations set forth in paragraphs 1 through 47 are hereby

adopted by reference as if repeated here verbatim.

### 49.

Eloise Smith  endured pain and suffering as a direct and proximate result of

the combined negligence of the Defendants, their agents and employees.

### 50.

Had Eloise Smith received appropriate care, treatment, assessment and

precautionary measures at Doctor's Hospice of Georgia, within the above-

described standard of care under like and similar circumstances, that her severe

pain, suffering, injuries, overall decline in health and September 7, 2013 death,

more likely than not, would have been avoided.

### 51.

Plaintiff, as the surviving child and personal representative of  Eloise Smith,

deceased, is entitled to recover for her mother's pain and suffering in an amount to

be determined by the enlightened conscience of the jury.

52.

Plaintiff, as the surviving child and personal representative of Leola Cunningham , deceased is entitled to recover for the funeral expenses caused by the Defendants' combined negligence in an amount to be proven at trial.

53.

Plaintiff files with this Complaint as Exhibit 16 the Affidavit of Inna Sheyner, MD, CMD, AGSF in compliance with the requirements of O.C.G.A. § 9-11-9.1. The Affidavit of   Inna Sheyner, MD, CMD, AGSF is incorporated herein by reference.

**WHEREFORE**, Mrs. Drain pleads the following:

I.      Judgment against Defendants Doctor's Hospice, Lee, Jane or John Does 1 through 5 jointly and severally for the fillowing:

      A.      Compensatory damages;

      B.      Punitive damages;

      C.      Pre- and Post- Judgment Interest; and

      D.      Costs of this action; and

II.     Trial by jury of all issues so triable.

## COUNT II - MEDICAL MALPRACTICE - WRONGFUL DEATH

54.

Each of the allegations set forth in paragraphs 1 through 47 are hereby adopted by reference as if repeated here verbatim.

55.

Plaintiff, as the surviving child and personal representative of Eloise Smith, deceased, is entitled to recover for the wrongful death of Plaintiff's mother for the full value of the life of Eloise Smith in an amount to be determined by the enlightened conscience of the jury.

56.

Plaintiff files with this Complaint as Exhibit 16 the Affidavit of Inna Sheyner, MD, CMD, AGSF in compliance with the requirements of O.C.G.A. § 9-11-9.1. The Affidavit of  Inna Sheyner, MD, CMD, AGSF is incorporated herein by reference.

**WHEREFORE**, Mrs. Drain pleads the following:

I.      Judgment against Defendants Doctor's Hospice, Lee, Jane or John Does 1 through 5 jointly and severally for the fillowing:

      A.      Compensatory damages;

      B.      Punitive damages;

      C.      Pre- and Post- Judgment Interest; and

D.     Costs of this action; and

II.     Trial by jury of all issues so triable.


## COUNT III - BREACH OF CONTRACT - PERSONAL INJURY

57.

Each of the allegations set forth in paragraphs 1 through 47 are hereby

adopted by reference as if repeated here verbatim.

58.

Defendant Longleaf had a contractual duty to Plaintiff to place Mrs. Smith in

a respite which was competent and committed to exercising due diligence in caring

for Mrs. Smith.

59.

Defendants Jane or John  Does 6 through 10 had a contractual duty to

Plaintiff to place Mrs. Smith in a respite which was competent and committed to

exercising due diligence in caring for Mrs. Smith.

60.

Defendant Longleaf breached its contractual duty to Plaintiff to place Mrs.

Smith in a respite which was competent and committed to exercising due diligence

by failing to inspect and review the staffing, policies, procedures, and practices of

Doctor's Hospice.

61.

Defendants Jane or John  Does 6 through 10  breached their contractual duty

to Plaintiff to place Mrs. Smith in a respite which was competent and committed to

exercising due diligence by failing to inspect and review the staffing, policies,

procedures, and practices of Doctor's Hospice.

62.

Eloise Smith  endured pain and suffering as a direct and proximate result of

the combined negligence of the Defendants Longlief, Jane or John  Does 6 through

10 , their agents and employees.

63.

Plaintiff, as the surviving child and personal representative of Leola

Cunningham , deceased is entitled to recover for the funeral expenses caused by the

Defendants' combined negligence in an amount to be proven at trial.

**WHEREFORE**, Mrs. Drain pleads the following:

I.       Judgment against Defendants Longleaf, Jane or John Does 6 through

         10 jointly and severally for the fillowing:

         A.       Compensatory damages;

         B.       Pre- and Post- Judgment Interest; and

         C.       Costs of this action; and

II.      Trial by jury of all issues so triable.

## COUNT IV - BREACH OF CONTRACT - WRONGFUL DEATH

64.

Each of the allegations set forth in paragraphs 1 through 47 are hereby adopted by reference as if repeated here verbatim.

65.

Defendant Longleaf had a contractual duty to Plaintiff to place Mrs. Smith in a respite which was competent and committed to exercising due diligence in caring for Mrs. Smith.

66.

Defendants Jane or John Does 6 through 10 had a contractual duty to Plaintiff to place Mrs. Smith in a respite which was competent and committed to exercising due diligence in caring for Mrs. Smith.

67.

Defendant Longleaf breached its contractual duty to Plaintiff to place Mrs. Smith in a respite which was competent and committed to exercising due diligence by failing to inspect and review the staffing, policies, procedures, and practices of Doctor's Hospice.

68.

Defendants Jane or John Does 6 through 10 breached their contractual duty to Plaintiff to place Mrs. Smith in a respite which was competent and committed to

exercising due diligence by failing to inspect and review the staffing, policies,

procedures, and practices of Doctor's Hospice.

69.

Eloise Smith suffered a painful and untimely death as a direct and proximate

result of the combined negligence of the Defendants Longlief, Jane or John Does 6

through 10 , their agents and employees.

**WHEREFORE**, Mrs. Drain pleads the following:

I. Judgment against Defendants Longleaf, Jane or John Does 6 through

  10 jointly and severally for the following:

  A. Compensatory damages;

  B. Pre- and Post- Judgment Interest; and

  C. Costs of this action; and

II. Trial by jury of all issues so triable.

**ALEXANDER  LAW FIRM, P.C.**

_____
**H.J.A. Alexander**
Ga. Bar No. 008863
Attorney for **Lorene Joyce Drain** is the
surviving daughter and personal
representative of decedent, **Plaintiff**.

Exh-1



Exhor 2





Exh. 4

DRA328





Exh. 6



Exh. 7



Exh. 8

DRA335



Exh. 9

DRA331



Exh. 10

DRA333



Exb. 11

DRA329



Exh. 12

DRA330



Exh. 13

DRA327



Exh. 14

DRA334



Exh. 15

PALLIATIVE PHARMACY SOLUTIONS
770-934-2976

Dr STONE MD, JAMES

N309118 08/13/1   2:22 PM
ELOISE SMITH
115 ADRIANS LANCovington, GA   2016
115 ADRIANS LANE
QTY 1   1L CKIT MORPHINE 20MG/ML

TAKE AS DIRECTED ON INDIVIDUAL
LABELS **USE ONLY UNDER THE
SUPERVISION OF HOSPICE NURSE**

08/13/13 Discard after: 02/09/14   No Refills

LONGLEAF

STATE OF FLORIDA            )
COUNTY OF HILLSBOROUGH)

### AFFIDAVIT OF INNA SHEYNER, MD, CMD, AGSF

Before the undersigned officer authorized to administer oaths personally appeared

**INNA SHEYNER, MD, CMD, AGSF**, who, being first sworn, states under oath as

follows:

1.

I am of age of majority and I suffer no disability which would preclude me from

giving testimony in this matter.

2.

I am a medical doctor licensed to practice medicine in the State of Florida.

Since 2002 I have been employed as Medical Director at Community Living Center,

which is a 110 beds Geriatric and Extended Care facility. JAHVA Hospital, Tampa,

Florida and Section Chief since 2008 at JAHVA Hospital, Tampa Fl/Geriatric and

Extended Care service, long-term care section.

3.

Additionally, since 2009 I have been and am an Associate Professor of Medicine

in the Department of Medicine, University of South Florida College of Medicine, Tampa

Florida.

1

Exh. 16

4.

I graduated from the Medical Academy of St. Petersburg in 1992; and completed my residency in Internal Medicine at the University of Illinois College of Medicine, Ravenswood Hospital Medical Center, Chicago Illinois in 1999 and the Fellowship in Geriatric Medicine at University of South Florida College of Medicine, Tampa Florida in 2000. For further details as to my education and medical training, attached hereto is an true and accurate copy of my curriculum vitae.

5.

Since 2003 I have been certified by the American Medical Directors Association as a Certified Medical Director. I have been a Diplomate of the American Board of Internal Medicine since 1999, and with added qualification in Geriatric Medicine since 2000.

6.

I am, and have been, a member of the American College of Physicians since 1996; a member of the American Geriatric Society since 1999, and a Fellow since December, 2011; a member of Florida Geriatric Society since, 1999, Chair of the Educational Committee since 2007 – present, Secretary – Treasurer from 2010 to 2011, and President in the 2012-2013 and 2013-2014 terms; a member as a Certified Medical Director of the American Medical Directors Association since 2003; and a member of the American Medical Directors Association Florida Chapter since 2010.

7.

Through my education, training and experience, I am familiar with the standard of care applicable to and governing physicians, nurses and other healthcare providers,

generally and under like and similar circumstances, who care for and treat patients such as **Eloise Smith**. I am familiar with the standard of care applicable to physicians, nurses and other healthcare providers, with respect to caring for and treating patients such as **Eloise Smith** during her admission to Doctors Hospice of Georgia , including providing appropriate care for the elderly patients with confusion and agitation. I give this affidavit based upon my personal knowledge obtained through my training and experience as a physician and based upon my review of the following medical records:

> Long Leaf Hospice records;
>
> Doctors Hospice of GA, Inc records;
>
> Kaiser Permanente records;
>
> Rockdale Medical Center records; and
>
> Eastside Internal Medicine Dr. Quasem records.

8.

I have assumed for the purpose of this Affidavit that the above-described records accurately reflect the course of care and treatment received by **Eloise Smith** and that the facts therein are reported correctly. The following facts appear in the records and are noted only in that they provide a brief overview of the care and treatment rendered; they are not intended to be in any way comprehensive nor do they recite the entirety of the record.

9.

The records reflect that **Eloise Smith** was a 91 year old female with past medical history of hypertension, colon cancer in remission and Alzheimer's dementia.

3

10.

My review of the records indicates **Eloise Smith** lived at home with her daughter and son in law, she was alert and oriented to her name with confusion, was ambulating by herself with a cane, had good oral intake and required only minimal assistance with her activities of daily living.

Routinely Mrs. Smith was taking only three medications (Amlodipine, Losartan and Haldol). She was using only Tylenol 325 mg three times a day on "as needed" basis.

On 8/16/13 **Eloise Smith** was admitted to the Doctors Hospice for five days respite admission while her daughter was traveling. According to the records, on admission to the Doctors Hospice on 8/16/13 Mrs. Smith was alert with confusion and was ambulating with supervision (which was her base line at home).

During her five days stay at the Doctor's Hospice, **Eloise Smith** received two high doses of very potent opioid Morphine, eight high doses of very potent sedative Lorazepam and two high doses of another potent sedative Temazepam. She became progressively lethargic, bed bound and had decreased intake of food and fluids. She was discharged home on a stretcher and remained very weak, confused and had decreased oral intake.

**Eloise Smith's** daughter brought her to the Rockdale Medical Center for evaluation of her mother's significant decline on 9/5/13.

In the Rockdale Medical Center **Eloise Smith** was diagnosed with severe constipation (requiring manual disimpaction of stool) and small bowel obstruction. Eloise Smith continued to nausea, vomiting and abdominal pain due to her small bowel obstruction.

4.

Her condition rapidly declined and she developed respiratory failure most likely secondary to aspiration pneumonitis in the setting of small bowel obstruction. Mrs. Eloise Smith died on 9/7/13. In her death certificate, "bowel obstruction" is listed as her cause of death.

11.

From my review of the records of Doctor's Hospice, **Eloise Smith** was subjected at Doctor's Hospice to neglect for her health and well-being that directly resulted in severe pain, discomfort, suffering and injuries including but not limited to acute functional and cognitive decline, small bowel obstruction, aspiration pneumonitis, respiratory failure, and ultimately her death.

The medical staff of the Doctor's Hospice, including the medical director(s) and admitting physician(s,) as well as the Director(s) of Nursing, nursing staff and nursing home administrator, had a responsibility to provide for and promote the health and well-being of **Eloise Smith**.

It is my opinion that based upon **Eloise Smith's** age and diagnosis of Alzheimer's dementia and constipation, it should have been clear and obvious to the medical director(s), the admitting physician(s), the Director(s) of Nursing, the nursing staff and the nursing home administrator that **Eloise Smith** was at risk for developing all of the injuries and conditions she suffered, as well as her death, if she was not provided appropriate nursing care and medical monitoring and services at the nursing home, including appropriate management of her confusion and appropriate administration of very potent and dangerous medications.

5

12.

In my opinion, the standard of care under like and similar circumstances required that **Eloise Smith** receive appropriate nursing assessment, care-planning and implementation of a nursing care plan, together with medical monitoring, services and treatment to prevent **Eloise Smith** acute cognitive and functional decline.

In my opinion, the Director of Nursing and the nursing staff at Doctor's Hospice Nursing Home and Rehabilitation Center deviated from the standard of care by failing to implement a plan of care to prevent **Eloise Smith** from acute cognitive and functional decline by providing proper assessment and proper  prevention measures including but not limited to non-pharmacological management of confusion and agitation, such as frequent re-orientation, re-direction and close observation by staff.

The standard of care further required the management of her acute confusion and avoidance of very dangerous medications such as Morphine,Lorazepam and Temazepam, by the nursing and medical staff responsible for the care and treatment of **Eloise Smith** at various times throughout her stay at Doctors Hospice of Georgia, including Peter Lee, M.D., to supervise and monitor the total program of care provided to a nursing home resident such as **Eloise Smith** , including medical services, medication management, nutrition and nursing care; as well as participate in the assessment and care planning process and monitor changes in medical and mental status; and, assure that the facility was providing appropriate care and the implementation of resident care policies.

Additionally, the standard of care required that her physician Peter Lee, M.D. in his capacity as medical director at various times during the course of **Eloise Smith** 's residence at the Doctor's Hospice, based upon her medical conditions including

6

Alzheimer's dementia and constipation, take appropriate and timely action to have the nursing home administrator correct deficiencies with respect to nursing care and other treatment issues which posed the risk of acute cognitive and functional decline, small bowel obstruction, aspiration pneumonitis, respiratory failure and death to patients such as **Eloise Smith** .

It is my opinion that the members of the medical staff, in their capacities as attending physician(s) and medical director(s), including Peter Lee, M. D., deviated from the applicable standard of care by failing to implement appropriate policies and practices for the care of such patients as **Eloise Smith**, and to require that nursing home officials and staff carry out such policies, practices and procedures.

13.

It is my opinion that all of above-described deviations from the standard of care set forth in the foregoing paragraphs 9 and 10, by: the nursing staff; Director(s) of Nursing; attending physician(s) and medical director(s) at Doctors Hospice of Georgia, including Peter Lee, M.D. as the administrator, and the attending nurses, of Doctor's Hospice of Georgia, who were responsible for the care and treatment of **Eloise Smith** , constituted acts of abuse and neglect under 42 CFR §§ 483.25.

It is my further opinion that the ongoing, above-described course of conduct of the nursing staff, Director(s) of Nursing, attending physician(s) and medical director(s) at Doctor's Hospice of Georgia, including Peter Lee, M.D., the administrator of the Doctor's Hospice, and others responsible for the care and treatment of **Eloise Smith** at Doctor's Hospice of Georgia, was so egregious that they acted with willful disregard and conscious indifference towards **Eloise Smith**.

7

It is my opinion that all of the foregoing combined negligent and wrongful conduct by the Doctor's Hospice of Georgia's nursing staff, director(s) of nursing, nursing home administrator and Peter Lee, M.D., in his capacity as attending physician for **Eloise Smith** directly resulted in severe pain, distress, suffering, and illness to **Eloise Smith** from August 16, 2013 until which ultimately led to her overall decline in health and her death on September 7, 2013. It is my further opinion that had **Eloise Smith** received appropriate care, treatment, assessment and precautionary measures at Doctor's Hospice of Georgia, within the above-described standard of care under like and similar circumstances, that her severe pain, suffering, injuries, overall decline in health and September 7, 2013 death, more likely than not, would have been avoided.

This affidavit and the matters stated herein are based upon my review of records and my personal knowledge, education, experience and training. This affidavit is written to comply with the requirements of O.C.G.A. § 9-11-9.1, and as such, delineates at least one departure from the standard of care by the health care providers responsible for the care and treatment of **Eloise Smith**, including the nursing staff, director(s) of nursing, attending physician(s), medical director(s), administrator and others responsible for the care and treatment of **Eloise Smith** at Doctor's Hospice of Georgia. This affidavit is not an exhaustive summary of all opinions I may hold in this matter, nor a listing of each and every departure from the standard of care. Should additional records become available, and as testimony is made available through discovery, I reserve the right to amend my opinions set forth herein.

**FURTHER THIS AFFIANT SAYETH NOT**.

This ___6___ day of April, 2015.

Inna Sheyner MD, CMD, AGSF

Sworn to and subscribed before
me this ___6___ day of April, 2015
My Commission expires:

_____
Notary Public

J TORRES
Notary Public - State of Florida
My Comm. Expires Jan 21, 2018
Commission # FF 094620